UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FRANCIS CLINE,                          )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )          No. 3:16-CV-503-CCS
                                        )
NANCY A. BERRYHILL,[1]                  )
Acting Commissioner of Social Security, )
                                        )
                    Defendant.          )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the consent of the parties [Doc. 18]. Now before the Court

is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24]

and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 27 &

28]. Francis Cline ("the Plaintiff") seeks judicial review of the decision of the Administrative Law

Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of

Social Security ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN**

**PART AND DENY IN PART** the Plaintiff's motion and **GRANT IN PART AND DENY IN**

**PART** the Commissioner's motion.

## I.      PROCEDURAL HISTORY

On October 22, 2012, the Plaintiff filed an application for disability insurance benefits

pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-403, claiming a period of disability

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner
Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is
substituted as the Defendant in this case.

that began on June 1, 2011. [Tr. 1184-87]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr. 140-41]. A hearing was held on October 28, 2014. [Tr. 40-92]. On March 16, 2015, the ALJ found that the Plaintiff was not disabled. [Tr. 22-32]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on August 12, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.
>
> 2.  The claimant has not engaged in substantial gainful activity since June 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3.  The claimant has the following severe impairments:  obesity; status post gastric bypass surgery; asthma; seizure disorder; migraine headaches; depressive disorder; anxiety disorder; and alcohol dependence in sustain remission (20 CFR 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).  The claimant can frequently perform all postural activities.  She can understand and remember simple, and one-to-three step instructions.  She has the ability to maintain concentration, persistence, and pace for two-hour periods for those tasks.  She can

interact appropriately with peers and supervisors and can adapt to routine workplace changes.

6. The claimant is capable of performing all past relevant work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2011, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 24-32].

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.     ANALYSIS

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4

> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff alleges the ALJ committed several errors. First, the Plaintiff argues the ALJ erred at step two when he determined that the Plaintiff's alleged impairment of fibromyalgia did not constitute a medical determinable impairment. [Doc. 24 at 19-22]. Second, the Plaintiff contends the ALJ erred at step three because she did not properly consider Listings 11.02 and 11.03. [*Id.* at 22-23]. Next, the Plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not adequately consider (1) the opinions of Licensed Senior Psychological Examiner, Donna Crosswait, M.Ed., and Licensed Clinical Social Worker, Shannon Dow, (2) the limitations imposed by the Plaintiff's seizure disorder, or (3) the Plaintiff's credibility or the credibility of her sister's testimony. [*Id.* at 13-19, 23-25]. Finally, the

Plaintiff asserts that new evidence exists regarding her seizure disorder, warranting a sentence six remand pursuant to 42 U.S.C. § 405(g). [*Id.* at 25-29]. The Court will address each alleged error in turn.

## A.    Step Two

The Plaintiff argues that the ALJ erred in concluding that the Plaintiff's allegation of fibromyalgia was not a medically determinable impairment.

At step two, a claimant must demonstrate she has a medically determinable impairment that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Social Security Ruling 12-2p, 2012 WL 3104869, at *1 (July 25, 2012) sets forth the requisite criteria for diagnosing fibromyalgia as a medical determinable impairment. The ruling provides two sets of criteria for diagnosing fibromyalgia: the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria. *Id.* at *2. The 1990 ACR Criteria for the Classification of Fibromyalgia requires: (1) a history of widespread pain in all four quadrants of the body persisting for at least three months, (2) a minimum of 11 positive tender points (bilaterally and above and below the waist) on examination, and (3) evidence excluding other potential disorders. *Id.* The 2010 ACR Preliminary Diagnostic Criteria requires: (1) a history of widespread pain, (2) repeated manifestation of six or more fibromyalgia symptoms, and (3) evidence excluding other potential disorders. *Id.*

In the disability determination, the ALJ acknowledged the Plaintiff's testimony in which she alleged she had fibromyalgia that caused pain and problems with lifting and postural movements. [Tr. 25]. Rheumatologist Aqueel Kouser, M.D., treated the Plaintiff on February 20 and May 8, 2013. [Tr. 801-840]. The ALJ found that Dr. Kouser made an equivocal diagnosis of

fibromyalgia because while his treatment notes indicated a diagnosis of fibromyalgia, there were no examination findings that met the diagnostic criteria enumerated in Social Security Ruling 12-2p. [Tr. 25, 802]. Specifically, Dr. Kouser did not indicate whether any "tender point testing" was done or the results. [Tr. 25, 806, 814]. When the Plaintiff returned for her follow-up visit on May 8, 2013, Dr. Kouser noted that the Plaintiff continued to have joint pain to some degree, but "overall, she has done reasonably well." [Tr. 808]. The ALJ also found the Plaintiff's testimony regarding pain in her hips and legs did not demonstrate the existence of pain in all four quadrants of the body. [Tr. 25]. Finally, the ALJ observed that despite consultative examiner, Jeffrey Uzzle, M.D., diagnosing the Plaintiff with fibromyalgia, Dr. Uzzle was not a specialist or a treating source, he examined the Plaintiff on one occasion, and he appeared to make his findings on the basis of the Plaintiff's subjective responses. [Tr. 25, 758].

The Plaintiff concedes that Dr. Kouser's treatment notes alone are inadequate to satisfy the criteria set forth in Social Security Ruling 12-2p but argues that the record as a whole fills the gaps in Dr. Kouser's treatment notes. [Doc. 24 at 20-21]. The Plaintiff cites to Dr. Uzzle's examination, in which the Plaintiff was positive for 16 of 18 fibromyalgia trigger points, and an examination performed by treating neurologist, Mohammad Hussain, M.D., who likewise noted specific tender points in various regions of the Plaintiff's body. [*Id.* at 21 (citing Tr. 758, 1349)]. The Court finds, however, that neither examination provides sufficient documentation that the Plaintiff had a history of widespread pain that has persisted for at least three months as required by the 1990 ACR Criteria for the Classification of Fibromyalgia. [Tr. 757-59, 1349]. Moreover, the Plaintiff does not set forth evidence of repeated manifestation of six or more fibromyalgia symptoms for purposes of the 2010 ACR Preliminary Diagnostic Criteria. [*Id.*]. Therefore, reviewing at the records as a whole, the evidence still falls short of satisfying Social Security Ruling 12-2p.

The Plaintiff argues that pursuant to 20 C.F.R. § 404.1520b(c) the ALJ had a duty to recontact Dr. Kouser for clarification since Dr. Kouser did not document the location or number of trigger points on examination.  Section 404.1520b(c) states that if the evidence is inconsistent or insufficient to make a disability determination, certain steps "may" be taken to resolve the matter, including recontacting the claimant's treating physician.  The regulation's suggestion is discretionary, not mandatory.  *See Boshers v. Comm'r of Soc. Sec.*, No. 1:16-CV-922, 2017 WL 2838236, at *7 (W.D. Mich. July 3, 2017) (holding that 20 C.F.R. § 404.1520b(c)(1) clarifies "that the Commissioner has 'discretion, not a duty, to re-contact a medical source.'") (quoting *Jones v. Colvin*, No. 2:12–cv–3605, 2014 WL 1046003, at *11 (N.D. Ala. March 14, 2014)).  The Court finds the lack of support for Dr. Kouser's diagnosis within his own treatment notes and examination findings did not trigger a duty on the ALJ's part to recontact Dr. Kouser.  Moreover, the Plaintiff's argument ignores that fact that other requisite criteria, such as a history of widespread pain that has persisted for at least three months or repeated manifestation of six or more fibromyalgia symptoms, is still lacking.  Therefore, the Court finds the Plaintiff's assignment of error at step two is without merit.

### B.    Step Three

The Plaintiff asserts that the ALJ failed to consider Listing 11.02 and 11.03 at step three in assessing the Plaintiff's seizure disorder.

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that her medical determinable impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Walters*, 127 F.3d at 529; *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001).  Each listing specifies "the objective medical and other findings needed to satisfy

the criteria of that listing."  20 C.F.R. §416.925(c).   Only when an impairment satisfies all of the listing's criteria will the impairment be found to meet a listing.  *Id.*

Under Listing 11.02 *Epilepsy—convulsive epilepsy*, (grand mal or psychomotor), seizures must be "documented by detailed description of a typical seizure pattern, including all associated phenomena."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.02.  Moreover, seizures must occur more than once a month and "in spite of at least 3 months of prescribed treatment . . . ." *Id.*  A claimant must also meet the paragraph A criteria, which describes daytime episodes as "loss of consciousness and convulsive seizures," or the paragraph B criteria, which describes "[n]octurnal episodes manifesting residuals which interfere significantly with activity during the day." *Id.*

As to Listing 11.03 *Epilepsy—nonconvulsive epilepsy* (petit mal, psychomotor, or focal), seizures must be "documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment." *Id.* at 11.03.  To satisfy 11.03, seizures should include "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." *Id.*

With regard to both Listing 11.02 and 11.03, the "degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures . . . Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available." *Id.* at 11.00(A).

At step three, the ALJ did not mention Listing 11.02 or 11.03 by name, instead finding that the Plaintiff did "not have the gravity of symptoms or medical documentation in order to establish an impairment of listing level severity."  [Tr. 27].

Arguing that she satisfies Listings 11.02 and 11.03, the Plaintiff cites to an abnormal EEG conducted by Dr. Hussain which revealed "abnormal sharp spike consistent with epileptic form activity." [Doc. 24 at 23 (citing Tr. 1349)]. The Plaintiff further argues that her allegations of seizure-related symptoms, including complaints of decreased memory, zoning out, staring into space, feeling disoriented, and headaches, satisfy the "alteration of awareness" and "significant interference with activity during the day" criteria required by Listing 11.03. [*Id.*].

The Court finds that the Plaintiff has not met her step three burden. The medical evidence, including the specific evidence cited by the Plaintiff, fails to satisfy the listings' frequency requirement. As to Listing 11.02, the Plaintiff has not demonstrated that she experienced convulsive epilepsy more frequently than once a month "in spite of at least 3 months of prescribed treatment." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.02. Treatment notes also generally lack a detailed description of all associated phenomena. *See id.* Furthermore, while the listing encompasses grand mal or psychomotor seizures, the Plaintiff testified she has only experienced three grand mal seizures since the onset of her seizure disorder a year ago. [Tr. 44]. Likewise, treatment records do not document nonconvulsive epilepsy occurring "more frequently than once weekly in spite of at least 3 months of prescribed treatment" for purposes of Listing 11.03. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.03. Although Dr. Hussain's treatment notes certainly document seizure activity, they do not consistently document the type or frequency of seizure occurrences in order to satisfy either listing.

The only other evidence presented of the Plaintiff's seizure disorder is the testimony of the Plaintiff's sister. [Tr. 65-66]. Her testimony, however, does not provide the requisite proof that the Plaintiff meets or equals Listing 11.02 or 11.03. As discussed more fully below, the ALJ did not find the sister's testimony credible and substantial evidence supports the ALJ's conclusion.

Therefore, the Court finds the Plaintiff has not met her burden in demonstrating that she meets or equals Listing 11.02 or 11.03.

## C. RFC

The Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not properly consider (1) the opinions of Licensed Senior Psychological Examiner, Donna Crosswait, M.Ed., and Licensed Clinical Social Worker, Shannon Dow, (2) the limitations imposed by the Plaintiff's seizure disorder, or (3) the Plaintiff's credibility or the credibility of her sister's testimony.

### 1. Medical Opinions

#### a. Licensed Senior Psychological Examiner, Donna Crosswait, M.Ed.

Ms. Crosswait completed a psychological evaluation after conducting evaluations of the Plaintiff on April 23 and 29, 2013. [Tr. 765-70]. The Plaintiff was referred to Ms. Crosswait "for the purpose of assessing her current psychoemotional status and affecting differently diagnostic impressions. . . ." [Tr. 765]. Based on various diagnostic testing and clinical interviews, Ms. Crosswait diagnosed the Plaintiff with the following: Major Depressive Disorder, Recurrent, Moderate; Rule Out Schizoaffective Disorder; Social Phobia, Generalized; Panic Disorder with Agoraphobia; and Avoidant Personality Disorder, with Paranoid, Schizoid, and Borderline Personality Traits. [Tr. 770].

Ms. Crosswait concluded that the Plaintiff has a history of anger and aggression, which was currently under control with medication. [Tr. 769]. In addition, the Plaintiff experienced a great deal of anxiety, causing her to avoid having relationships with others. [Tr. 770]. The Plaintiff was noted to suffer from panic attacks once to twice a week, causing her to avoid going out in

public due to fear of being humiliated or judged by others. [*Id.*]. Treatment recommendations included individual and group therapy, steps to improve social skills and desensitization of phobias, relaxation exercises and coping techniques to address panic attacks, psychiatric medication management, and a psychiatrist assessment to determine whether the Plaintiff's suspiciousness and paranoia is delusional in nature or attributed to simple social phobia. [*Id.*].

In the disability determination, the ALJ gave little weigh to Ms. Crosswait's opinion on the basis that she was not an acceptable medical source or a treating source, her opinion was not consistent with treatment notes from the Plaintiff's mental health treatment provider, and her opinion was based on a one-time evaluation of the Plaintiff. [Tr. 30].

The Plaintiff maintains that the ALJ erroneously concluded that Ms. Crosswait was not an acceptable medical source. [Doc. 24 at 14]. The Plaintiff relies on the Commissioner's Program Operations Manual ("POMS") for the proposition that senior psychological examiners are considered acceptable medical sources. [*Id.*]. The Plaintiff also contends that she was evaluated by Ms. Crosswait on two occasions, rather than once as asserted by the ALJ, and further suggests that Ms. Crosswait is a treating source subject to the "good reason" requirement enumerated in 20 C.F.R. § 404.1527(c)(2). [*Id.* at 14-15]. Finally, the Plaintiff submits that the ALJ did not specify which treatment notes are inconsistent with Ms. Crosswait's opinion. [*Id.* at 15].

As an initial point, the Court considers the classification of Ms. Crosswait as a medical source which in turn determines the level of deference her opinion deserves. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) ("The source of the opinion therefore dictates the process by which the Commissioner accords it weight."). Generally, an opinion from an examining source is entitled to more weight than an opinion for a nonexamining source, and an opinion from a treating source (a source who regularly treats a claimant) is entitled to more weight

12

than either a nontreating, examining source or a nontreating, nonexamining source due to the nature of the ongoing treating relationship with the claimant. 20 C.F.R. §§ 404.1502, 404.1527(c)(1)-(2). Moreover, only opinions offered from "acceptable medical sources," that is, in relevant part, licensed physicians and licensed or certified psychologists, may offer evidence to establish a medical determinable impairment. § 404.1513(a)(1)-(2). "Other sources," which include medical sources who do not qualify as acceptable medical sources, may only offer evidence as to the severity of a claimant's impairment. § 404.1513(d)(1).

The Court finds that Ms. Crosswait is a nontreating, examining source who qualifies as an other source under the regulations. In reaching this conclusion, the Court observes that Ms. Crosswait examined the Plaintiff on two occasions for the limited purpose of assessing the Plaintiff's current psychoemotional status and offering a diagnostic impression. [Tr. 765]. Although the ALJ incorrectly noted that Ms. Crosswait had only seen the Plaintiff on one occasion, the mistake is inconsequential to the determination of Ms. Crosswait's medical source status. Nothing within Ms. Crosswait's evaluation suggests that the Plaintiff intended to establish a treating relationship or return for further treatment.

Furthermore, Ms. Crosswait qualifies as an other source because she is not a licensed or certified psychologist. The Court finds the Plaintiff's reliance on the POMS misplaced. A psychologist is an acceptable medical source if the evidence documents that the individual is a "[l]icensed or certified psychologists at the independent practice level" or a "[s]chool psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting." POMS, DI 22505.003, https://secure.ssa.gov/apps10/poms.nsf/lnx/0422505003#a (last updated March 24, 2017); *see* 20 C.F.R. § 404.1513(a)(2) (stating the same). In Tennessee, senior psychological examiners may be

considered acceptable medical sources if they "perform the same function as school psychologists in a school setting." POMS, DI 22505.04(A)(2)(b), https://secure.ssa.gov/apps10/poms.nsf/lnx/0422505004 (last updated April 4, 2017). Here, there is no evidence to suggest that Ms. Crosswait, who holds a Master's in Education, is a licensed or certified psychologist, a school psychologist, or someone who performs the same functions as a school psychologist in a school setting. The Court also observes that the Sixth Circuit Court of appeals and other courts in this circuit have recognized that a Master's in Education does not meet the criteria of an "acceptable medical source." *See Covucci v. Apfel*, 31 F. App'x 909, 913 (6th Cir. 2002) (recognizing that a licensed personal counsel with the credentials of a Master's in Education constitutes "other source" evidence); *Witnik v. Colvin*, No. 14-CV-00257, 2015 WL 691329, at *8 (N.D. Ohio Feb. 18, 2015) ("It does not appear to be contested that Mr. Lee[, M.Ed.,] does not constitute an 'acceptable medical source' under the regulations."); *McBride v. Astrue*, No. CIV.A. 12-20-JBC, 2012 WL 2880733, at *2 (E.D. Ky. July 13, 2012) (agreeing with the ALJ that a therapist with a Master's in Education "was not an acceptable medical source").

Accordingly, the Court finds Ms. Crosswait was not due treating source deference. An "opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015) (recognizing that a physical therapist was a "non-acceptable medical source" and therefore "the ALJ was not required to give her opinion any particular weight.") (citations omitted). Nonetheless, the ALJ must consider an other source opinion and should generally explain the weight given to the opinion. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, *6 (Aug. 9, 2006).

Turning to the remainder of the Plaintiff's allegation—that the ALJ did not specify which treatment notes are inconsistent with Ms. Crosswait's opinion—the Court observes that the ALJ discussed treatment records from Helen Ross McNabb Center, the Plaintiff's primary mental health provider, as the medical evidence at odds with Ms. Crosswait's opinion. In this regard, the ALJ found that the Plaintiff experienced improvement in her symptoms beginning in 2014. For example, in May 2014, the Plaintiff indicated that she was doing better after children who had been staying in her home went to live at an aunt's house. [Tr. 29, 958]. In June 2014, "bipolar disorder, not otherwise specified" was removed as a diagnosis, but replaced with major depressive disorder and generalized anxiety disorder. [Tr. 29, 1100]. The following month, however, the Plaintiff denied having any depressive symptoms or mood swings. [Tr. 29, 1091]. The ALJ further observed that treatment notes from July 31, 2014 forward indicated that the Plaintiff's anxiety resolved, noting that the Plaintiff's anxiety occurred episodically and mostly when she sat at home with nothing to do. [Tr. 29, 1080, 1091]. In addition, treatment notes generally indicated that the Plaintiff exhibited normal dress and behavior, appropriate thought process, affect, and mood, and the Plaintiff reported sleeping restfully for seven to eight hours each night. [Tr. 29, 1088-1103]. Finally, the ALJ noted the most recent treatment notes—specifically, treatment notes from July, August, and September 2014—assessed the Plaintiff with mild functional limitations in daily living activities, social interactions, and ability to concentrate, persist, and keep pace. [Tr. 29, 1084, 1088, 1094, 1098].

The Plaintiff objects to the existence of any specific treatment note that documents the Plaintiff's anxiety had "resolved" as found by the ALJ. [Doc. 24 at 15]. The Court observes that while the treatment notes do not appear to use the word resolve, they do relay the Plaintiff's report that she had "[a] little bit of anxiety but nothing [she] can't handle," "mild" episodic anxiety related

15

to "family drama" or instances when the Plaintiff was home alone and bored, and mild functional limitations. [Tr. 1080, 1084, 1088, 1091, 1094, 1098]. Accordingly, the Court finds that the ALJ's conclusion that the Plaintiff's anxiety had resolved was a reasonably interpretation of the medical evidence which also undermines the supportability of Ms. Crosswait's opinion. *See Brandon v. Astrue*, No. 1:09CV00857, 2010 WL 1444639, at *8 (N.D. Ohio Jan. 27, 2010) ("This Court does not conduct a *de novo* review and cannot remand a matter simply because it might have interpreted the evidence of record differently than the ALJ."), *adopted by*, No. 1:09CV857, 2010 WL 1444636, at *1 (N.D. Ohio Apr. 12, 2010). Therefore, the Plaintiff's allegation of error as to Ms. Crosswait is not well-taken.

### b. Licensed Clinical Social Worker, Shannon Dow

Ms. Dow, the Plaintiff's treating therapist at Helen Ross McNabb Center, completed a "Medical Source Statement of Ability To Do Work-Related Activities (Mental)" on October 9, 2014. [Tr. 954-56]. Therein, Ms. Dow opined that the Plaintiff had a slight limitation understanding and remembering short, simple instructions, moderate limitations carrying out short, simple instructions, and marked limitations understanding, remembering, and carrying out detailed instructions and making judgments on simple work-related decisions. [Tr. 954]. Ms. Dow also assessed marked limitations interacting with the public, co-workers, and supervisors, and responding appropriately to changes in a routine work setting. [Tr. 955]. Ms. Dow further opined that the Plaintiff was extremely limited in her ability to respond appropriately to work pressures in a usual work setting. [*Id.*]. Finally, Ms. Dow opined that the Plaintiff had marked limitations keeping up with daily living requirements such as housekeeping. [*Id.*].

The ALJ concluded that Ms. Dow was not an acceptable medical source and could therefore not be considered a treating source as defined by the regulations. [Tr. 30]. The ALJ

moreover concluded that the Plaintiff's daily living activities and mental health treatment records, including those from Ms. Dow, did not support the marked and severe limitations she assessed. [*Id.* (citing Tr. 1084)]. The ALJ accordingly assigned "little weight" to Ms. Dow's opinion. [*Id.*]. The ALJ proceeded to then give "great weight" to "the totality of the mental health provider treating source notes and reports," explaining that on August 28, 2014, the Plaintiff was reported to only have mild limitations in activities of daily living, concentration, persistence, and pace, and adaption. [*Id.* (citing Exhibit 25F)].

The Plaintiff concedes that Ms. Dow is not an acceptable medical source but argues that Ms. Dow's opinion was entitled to greater deference. [Doc. 24 at 16-18]. The Plaintiff argues that the ALJ failed to consider the number of therapy sessions Ms. Dow conducted over a three year period and also ignored the consistency and supportability of her opinion with other record evidence. [*Id.* at 18]. The Plaintiff complains that in finding Ms. Dow's opinion inconsistent with mental health treatment records, the ALJ only relied on the August 28, 2014 treatment note which provided a snapshot evaluation of the Plaintiff's functioning. [*Id.* at 18]. Moreover, the Plaintiff maintains the ALJ failed to clarify which "mental health provider treating source notes and reports" received great weight from the ALJ. [*Id.* at 18-19].

The Court concludes that the ALJ did not err. First, the Court finds the ALJ properly observed that Ms. Dow was not an acceptable medical source and cannot be considered a treating source but did not reject her opinion on that basis alone. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 119 (6th Cir. 2010) (holding that "social workers are not acceptable medical sources"). Second, and instead, the ALJ relied on treatment records from Helen Ross McNabb Center in support of her conclusion that the marked limitations assessed by Ms. Dow were unsupported. [Tr. 29]. Although the Plaintiff argues that the ALJ did not properly consider the

17

nature and extent of the Plaintiff's treating relationship with Ms. Dow, the ALJ's decision makes clear that she considered the entirety of the Plaintiff's treatment health records from Helen Ross McNabb Center, which encompasses Ms. Dow's treatment notes. The regulations charge the ALJ to consider all relevant evidence in the record, *see* 20 C.F.R. § 404.1520b, but the requirement does not equate to a command that the ALJ comment on all the evidence, *see Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."). For this same reason, the ALJ's makes clear that her reference to "the totality of the mental health provider treating source notes and reports" were the treatment records from Helen Ross McNabb Center which received great weight.

While the ALJ did cite to Ms. Dow's August 28, 2014 treatment note to support the conclusion that the mild mental limitations assessed therein contradicted Ms. Dow's marked limitations, the Court observes that the majority of Ms. Dow's treatment notes from 2011 through 2014 opine similar limitations in that the Plaintiff's activities of daily living, interpersonal functioning, concentration, task performance, and pace, and adaption to change were consistently rated as mild and moderate at worse. [Tr. 339, 349, 375, 408-09, 650, 779, 791, 963, 1324]. Even when the Plaintiff was noted to have an anxious effect, depressed mood, or related her fear of being in public, Ms. Dow did not opine limitations beyond moderate. [*Id.*]. Therefore, the ALJ's citation to Ms. Dow's August 28, 2014 treatment note was reflective of Ms. Dow's findings made throughout her treatment with the Plaintiff and do not represent an isolated account of the Plaintiff's perceived level of functioning. Accordingly, the Court finds Ms. Dow's opinion was properly considered by the ALJ and allegations to the contrary are not well-taken.

### 2. Seizure Imposed Limitations

The Plaintiff maintains that the ALJ erred by failing to include any seizure-related limitations in the RFC, such as restrictions against heights or exposure to sharp objections or moving machinery, despite having found the disorder a severe impairment.  [Doc. 24 at 22].  The Plaintiff cites to a treatment note by Dr. Kabbani that documents the Plaintiff's complaints of decreased memory, zoning out, staring into space, disorientation, and headaches, as evidence that the Plaintiff's seizure disorder causes disabling limitations.  [Doc. 24 at 23 (citing Tr. 844)].

The ALJ found the Plaintiff's reported symptoms "do not describe disabling limitations; nor did Dr. Kabbani indicate so."  [Tr. 28].  The ALJ observed that no further medical evidence of treatment for seizures was contained in the record beyond Dr. Kabbani treating the Plaintiff with samples of the drug Vimpat.  [*Id.*].  Accordingly, the ALJ did not assess any seizure-related limitations within the Plaintiff's RFC.

The Court observes that although the ALJ found the Plaintiff's seizure disorder a severe impairment, the ALJ was not required to assess specific functional limitations in turn.  *See Higgs v. Brown*, 880 F.2d 860, 863 (6th Cir. 1988) (observing that a diagnosis alone says nothing about the severity of a condition).  Furthermore, the ALJ was not required to accept the Plaintiff's subjective allegations alone as evidence that her condition required work-related limitations.  Although not cited by the Plaintiff, the record does contain an August 5, 2014 seizure letter by Dr. Kabbani that explains certain precautions the Plaintiff should take and further identifies symptoms and situations which may exacerbate seizure activity.  [Tr. 845].  The Court notes, however, that the letter appears to be a form letter given to all seizure patients despite the Plaintiff's name handwritten on the top of the letter and the bottom of the letter bearing the Plaintiff's and Dr. Kabbani's signatures.  For example, the letter states, "There are certain precautions which must be

19

noted for seizure patients." [Tr. 846]. It continues, "We do not recommend patients work around fires (i.e. grills, torches), sharp objects (i.e. knives, meat-slicers), heights (i.e. climbing ladders, roofing) or stressful situations (when possible.)" [*Id.*]. The letter's use of the term "patients" appears to suggest that the letter does not supply findings uniquely related to the Plaintiff's treatment or condition. The letter further cautions to avoid driving unless seizure-free for more than six months. [*Id.*].

Nevertheless, the Court finds that the letter does provide some evidence that the Plaintiff's seizure disorder may impose limitations beyond those incorporated into her RFC. At a minimum, the letter contradicts the ALJ's conclusion that Dr. Kabbani did not render any disabling limitations which in turn suggests that the ALJ was either unaware of the letter or disregarded it without explanation. While the ALJ is not obligated to include all, or even some, of the limitations discussed in the letter, the ALJ's decision must at least provide a reasoned explanation why none of these seizure-related limitations were incorporated into the Plaintiff's RFC, particularly where the ALJ concluded that Dr. Kabbani did not render any restrictions. *See Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) ("[S]ubstantiality of evidence must take into account whatever in the record fairly detracts from its weight."). Accordingly, the Court will remand the case for reconsideration of Dr. Kabbani's letter and to determine whether the Plaintiff's RFC warrants additional limitations based on the Plaintiff's seizure disorder.

### 3.     Credibility

The Plaintiff alleges the ALJ did not properly assesses the Plaintiff's credibility or the credibility of the Plaintiff's sister who offered testimony during the hearing.

In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters*, 127 F.3d at 531. "[D]iscounting credibility to a certain degree is appropriate

where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* The ALJ's finding regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* Nonetheless, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

As to the credibility of the Plaintiff, the ALJ found the Plaintiff's allegations less than fully credible for two reasons. First, the ALJ found that the Plaintiff had "a poor work history, which raises a question as to whether her continuing unemployment is actually due to medical impairments." [Tr. 28]. Second, the ALJ observed that the Plaintiff worked as a childcare worker and babysitter through the State of Tennessee during part of the period she alleges she was disabled. [*Id.*]. The ALJ concluded that the Plaintiff was "not physically disabled or mentally disabled because the State of Tennessee put her in charge of caring for children." [*Id.*].

The Plaintiff argues that substantial evidence does not support a finding that the Plaintiff had a "poor work history" because the record reflects that the Plaintiff was employed for the majority of time from 2000 to 2011, and the Plaintiff was able to accumulate four quarters of coverage every year except 2007 and 2009. [Doc. 24 at 24 (citing Tr. 195)]. As to the Plaintiff's job as a childcare worker, the Plaintiff argues that there is no indication the state was aware of the Plaintiff's condition, and the job was also an "unsuccessful work attempt" under the regulations because she only worked for three months and had to quit due to her impairments. [*Id.* at 24-25 (citing Tr. 207)].

21

The Court observes that a claimant's work history is an appropriate factor that may be weighed in assessing credibility. *See* 20 C.F.R. § 404.1529(c)(3) (explaining that in evaluating the intensity and persistency of symptoms, evidence about a claimant's prior work may be considered). While a poor work history may support an adverse credibility finding, it may just as easily demonstrate an inability to work rather than an unwillingness. *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). "Therefore, a consideration of work history must be undertaken with great care." *Id.* Here, it is unclear why the ALJ concluded the Plaintiff had a poor work history. As argued by the Plaintiff, she worked a majority of the time beginning in 2000 until her alleged onset date in 2011. [Tr. 291-92]. Although she may not have earned a significant income, her consistent work history led her to accumulate four quarters of coverage almost every year she was employed.

The Court finds that ALJ's second reason is also unsupported by substantial evidence. The ALJ found that the Plaintiff's ability to work for the state as a childcare worker presented "compelling evidence that [Plaintiff] is not physical disabled or mentally disabled." [Tr. 28]. The ALJ failed to mention, however, that the Plaintiff performed the job less than three months and quit due to her impairments. [Tr. 205-06]. Given the brief period of time the Plaintiff worked and her reason for quitting, along with the ALJ's unsubstantiated finding that the Plaintiff has a poor work history, the Court is unable to conclude that substantial evidence supports the ALJ's credibility determination. Accordingly, the Court will remand the case on this basis as well.

Finally, with regard to the testimony of the Plaintiff's sister, Melissa Johnson, Ms. Johnson testified about the Plaintiff's impairments, including the Plaintiff's seizure disorder and depression. [Tr. 65-67]. She explained that she is familiar with the Plaintiff's condition because she is at the Plaintiff's home every day for three to five hours and keeps her sister company. [Tr.

22

66]. Ms. Johnson also related that she cares for several minor children and grandchildren and receives disability benefits for a seizure disorder. [Tr. 69-70]. She testified that she has four to five grand mal seizures a week and has to lay in bed following a seizure. [Tr. 71-72]. The ALJ questioned the credibility of Ms. Johnson's testimony, finding it "hard to believe" that Ms. Johnson could drive, care for numerous children, and still be at her sister's house daily given her seizure activity. [Tr. 29].

The Plaintiff argues that there is nothing in the record to support the ALJ's rejection of Ms. Johnson's testimony. [Doc. 24 at 25]. The Court finds that the ALJ could reasonably conclude that Ms. Johnson's testimony was incredible. *See Masters v. Comm'r of Soc. Sec.*, No. 17-5561, 2017 WL 5508536, at *5 (6th Cir. Nov. 17, 2017) ("As to the lay testimony, an ALJ may discount subjective assertions about the extent of a claimant's symptoms by giving "specific reasons . . . supported by the evidence in the case record.") (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996)). Because Ms. Johnson testified she has four to five grand mal seizures a week which cause her to bedridden, and she is responsible for the care of multiple minor children, the Court finds that the ALJ could reasonably conclude that Ms. Johnson testimony was not entirely credible. Moreover, the Court notes inconsistencies in Ms. Johnson's testimony concerning her ability to drive. She initially testified she drives the Plaintiff anywhere she needs to go, then testified she does not drive unless she is seizure free for at least six months, and then relayed she does drive. [Tr. 67-68]. Given this inconsistency in addition to her reported seizure activity and childcare responsibilities, the Court finds that substantial evidence supports the ALJ's finding regarding Ms. Johnson's testimony.

###### D.    Sentence Six Remand

As a final matter, the Plaintiff argues that new evidence exists regarding her seizure disorder that supports a sentence six remand pursuant to 42 U.S.C. § 405(g).  [Doc. 24 at 25-29]. Attached to the Plaintiff's brief are treatment notes from Francisco Moreno, M.D., who performed a VNS implant on the Plaintiff in 2016.  [Doc. 24-1].  The Court finds that it need not reach the merits of this issue.  Because the Court has determined that a remand is appropriate, in part, to reassess whether the Plaintiff's seizure disorder warrants additional functional limitation, the ALJ may consider all necessary and relevant evidence on remand.

## V.    CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 27**] will be **GRANTED IN PART AND DENIED IN PART** and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **GRANTED IN PART AND DENIED IN PART**.  This case will be **REMANDED** to the SSA with instructions that the ALJ (1) reconsider Dr. Kabbani's seizure letter and determine whether the Plaintiff's RFC requires specific seizure-related limitations, and (2) reassess the Plaintiff's credibility.

ORDER ACCORDINGLY.

        s/ C. Clifford Shirley, Jr.
        United States Magistrate Judge